## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRYSTAL WEBER** | : | |
| **Goodrich, MI 48438** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WYOMING SEMINARY** | : | |
| **201 North Sprague Avenue** | : | |
| **Kingston, PA 18704** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **and** | : | |
| | : | |
| **THE WYOMING SEMINARY OF THE** | : | |
| **SUSQUEHANNA ANNUAL** | : | |
| **CONFERENCE OF THE** | : | |
| **UNITED METHODIST CHURCH** | : | |
| **201 North Sprague Avenue** | : | |
| **Kingston, PA 18704** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Crystal Weber, brings this action against her former employers,

Wyoming Seminary and Wyoming Seminar Susquehanna Annual Co. ("Defendants").

Defendants subjected Plaintiff to egregious sex discriminatory conduct and then retaliated

against her after she complained about the same.  Defendants' sex discriminatory and

retaliatory conduct was in violation of Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §2000, *et seq*. ("Title VII") and the Pennsylvania Human Relations

Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

II.    **PARTIES**

1.      Plaintiff, Crystal Weber, is an individual and citizen of the state of Michigan.

2.      Plaintiff is female.

3.      Defendant, Wyoming Seminary, is a Pennsylvania corporation with a principal place of business at 201 North Sprague Avenue, Kingston, PA 18704.

4.      Defendant, The Wyoming Seminary of the Susquehanna Annual Conference of the United Methodist Church, is a Pennsylvania corporation with a principal place of business at 201 North Sprague Avenue, Kingston, PA 18704. 16.

5.      Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania.

6.      At all times material hereto, Defendants employed more than fifteen (15) employees.

7.      At all times material hereto, Defendants acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

8.      At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

9.      At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

III.   **JURISDICTION AND VENUE**

10.     The causes of action which form the basis of this matter arise under Title VII and the PHRA.

11.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

12.     The District Court has jurisdiction over all counts pursuant to 28 U.S.C. §1332 since the amount in controversy in the present action exceeds the sum or value of seventy five thousand dollars ($75,000), exclusive of interests and costs, and there exists complete diversity of citizenship, as Plaintiff is a citizen of the state of Michigan and Defendants are not citizens of the state of Michigan.

13.     The District Court has jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

14.     Venue is proper in the District Court under 28 U.S.C. §1391(b).

15.     On or about June 8, 2021, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of acts of discrimination and retaliation alleged herein.  The Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint of Discrimination (with personal identifying information redacted).

16.     On or about October 19, 2022, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for her Complaints of Discrimination.  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

17.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.    **FACTUAL ALLEGATIONS**

18.     According to their website, Defendants are an independent college preparatory private school.  Defendants include a lower school for toddlers through Grade 8 and an upper school for Grade 9 through post-graduate.

19.     Plaintiff was hired by Defendants on or about September 1, 2019 into the position of Assistant Wrestling Coach for the girls' varsity team in the upper school.

20.     According to Defendants' website, they are a "trailblazer in the sport of girls' wrestling" and its girls' wrestling team was the first high school girls' wrestling team in the Commonwealth of Pennsylvania.

21.     At all times material hereto, Plaintiff performed her job in a highly competent manner.

22.     As of the time of Plaintiff's termination, she reported directly to Erin Vandiver (female), Head Girls' Wrestling Coach.  Vandiver reported to Thomas Morris (male), Dean of Upper School.  Morris reported to Kevin Rea (male), President.

23.     Defendants subjected Plaintiff to sex-based comments and conduct, including that set forth herein.

24.     On or about February 13, 2021, two female students on the wrestling team asked Plaintiff if she could replace Chad Vandiver (male), Assistant Volunteer Coach, as their coach in an upcoming event.

25.     The female students told Plaintiff that C. Vandiver made them uncomfortable.

26.     C. Vandiver is E. Vandiver's husband.

27.     On the following day, Plaintiff and Maya Nelson (female), Assistant

Wrestling Coach, complained to E. Vandiver regarding C. Vandiver's conduct towards female students on the wrestling team.

28.     Plaintiff specifically told E. Vandiver that female students had requested that she coach them instead of C. Vandiver and that they had complained that he made them uncomfortable.

29.     Plaintiff also told E. Vandiver that she was concerned about how C. Vandiver interacted with the female students, including that he took out his anger and aggression on them.

30.     E. Vandiver told Plaintiff that she would not grant the female students' request to have Plaintiff coach them instead of C. Vandiver.

31.     E. Vandiver also told Plaintiff that C. Vandiver treated the female students the way that he did because "he believed that the girls needed male discipline".

32.     After Plaintiff complained to E. Vandiver about C. Vandiver's unfavorable treatment of the female students, including that he made them uncomfortable, E. Vandiver accused Plaintiff of having missed three practices that week.

33.     E. Vandiver's accusation that Plaintiff had missed three practices that week was false.

34.     Prior to Plaintiff complaining to E. Vandiver about C. Vandiver's unfavorable treatment of the female students, E. Vandiver had not accused Plaintiff of missing practices.

35.     On the following day, Plaintiff asked E. Vandiver why she had falsely accused her of having missed three practices.

36.     After Plaintiff asked E. Vandiver about her accusations that Plaintiff had

missed practices, E. Vandiver then admitted that Plaintiff had not missed practices, but said that she had failed to show up an hour before each practice.

37.　　Plaintiff had not been previously told that she was expected to show up an hour before each practice.

38.　　Plaintiff also asked E. Vandiver why she was refusing to grant the female students' request that she coach them at the upcoming event rather than C. Vandiver when they had complained that he made them uncomfortable.

39.　　E. Vandiver was dismissive of the female students' concerns that Plaintiff related to her about C. Vandiver's conduct towards them.  She told Plaintiff that the female students did not know what they wanted and that it did not matter who was coaching them.

40.　　Plaintiff told E. Vandiver that she was concerned that C. Vandiver's conduct towards female students compromised their safety.

41.　　Plaintiff also told E. Vandiver that she did not want to travel with C. Vandiver on a separate, upcoming trip because his hostile and aggressive conduct towards both her and female students made her uncomfortable.

42.　　Plaintiff also told E. Vandiver that she did not want to travel with C. Vandiver on the upcoming trip because she was concerned that he would retaliate against her based on the complaints that she had made about his towards her and female students.

43.　　On or about February 26, 2021, Plaintiff was on an overnight trip with C. Vandiver and female students.

44.　　Late at night, after Plaintiff had checked on the students and told C. Vandiver that she was going to bed, C. Vandiver came to Plaintiff's hotel room.

45.    When Plaintiff answered her hotel room door, C. Vandiver told her that he wanted her to go with him to meet some of his friends who were at the hotel.

46.    When Plaintiff refused to come with C. Vandiver to meet his friends, he pressured her to do so and told her that he would not leave and that he would not take "no" for an answer.

47.    Due to C. Vandiver's pressure, Plaintiff left with C. Vandiver and he took her to his hotel room.

48.    When Plaintiff arrived at C. Vandiver's hotel room with him, there were four men present, all of whom were drinking.

49.    C. Vandiver and his male friends in his hotel room repeatedly pressured Plaintiff to drink alcohol with them.  When Plaintiff declined, she was told to shut up and the men put drinks in her hand and pressured her to drink them.

50.    The men in C. Vandiver's hotel room sexually harassed Plaintiff.

51.    One of the men started wrestling with Plaintiff, including repeatedly grabbing Plaintiff's vagina and throwing her onto the bed.

52.    When Plaintiff rolled off the bed, the man continued to grab her vagina, pick her up, and throw her onto the bed.

53.    One of the men rubbed his hands up and down Plaintiff's arms.

54.    The men told Plaintiff that the role of a woman was to have children.

55.    The men asked Plaintiff whether she was healthy enough to have children.

56.    C. Vandiver witnessed the sexual conduct to which his male friends subjected Plaintiff.

57.    C. Vandiver did not take action regarding the sexually harassing conduct,

including sexual assault, to which Plaintiff was subjected.

58.     When C. Vandiver's male friends eventually left the room, Plaintiff, who was extremely upset, asked C. Vandiver to show her where her room was.

59.     C. Vandiver pointed Plaintiff in the direction of her room, after which she left, on her own, and returned to her room.

60.     Early the following morning, while she was still on the work trip with C. Vandiver, Plaintiff complained to her colleague, Nelson, about the sexually harassing conduct to which she had been subjected by C. Vandiver and his male friends.

61.     Later that same day, C. Vandiver pressured Plaintiff to bring female students to a restaurant to meet with him and his male friends who had sexually harassed Plaintiff the prior night.

62.     Plaintiff told C. Vandiver that she would not go anywhere with him, and that she would not subject female students to the conduct to which she had been subjected.

63.     On or about March 1, 2021, to Plaintiff's information and belief, Nelson advised E. Vandiver about the sexually harassing conduct to which Plaintiff had been subjected by C. Vandiver and his male friends.

64.     On or about March 4, 2021, Plaintiff complained to E. Vandiver about the sexually harassing conduct, including sexual assault, to which she had been subjected by C. Vandiver and his male friends.

65.     Plaintiff reminded E. Vandiver that she had expressed concerns about going on an overnight trip with C. Vandiver before the trip, but that she had been told to go, and that she had then been sexually assaulted on the trip.

66.     E. Vandiver's response to Plaintiff's complaints was that C. Vandiver knew that he had "screwed up" and that he was sorry.

67.     On or about March 8, 2021, Plaintiff complained to Stephanie Heerschap (female), Residential Life Director, regarding the sexually harassing conduct, including sexual assault, to which she had been subjected.

68.     Plaintiff also told Heerschap that female students had complained to her about C. Vandiver's conduct towards them, including that he flirted with them and that he made them uncomfortable.

69.     Heerschap told Plaintiff that C. Vandiver should never be allowed on Defendants' campus again.

70.     Heerschap also told Plaintiff that, based on her opinion about C. Vandiver and E. Vandiver, she was not surprised about Plaintiff's allegations about them.

71.     On or about March 11, 2021, Plaintiff complained to Morris about the sexually harassing conduct, including sexual assault, to which she had been subjected.

72.     Morris' response was to ask Plaintiff if she wanted to get Defendants' attorney involved.  Plaintiff said that she did.

73.     On or about March 12, 2021, Plaintiff complained, again, to Morris and to Kathleen Hanlon, Lower School Dean, regarding the sexually harassing conduct, including sexual assault, to which she had been subjected.

74.     On or about March 15, 2021, Plaintiff complained, again, about the sexually harassing conduct, including sexual assault, to which she had been subjected to Karen Klassner, Director of Athletics, and James Anderson, Associate Athletic Director.

75.     On or about March 16, 2021, Plaintiff was advised that Defendants were

conducting an investigation into her complaints.

76.     Plaintiff was also told that C. Vandiver and E. Vandiver had been temporarily suspended, and that team practices had been cancelled.

77.     After Plaintiff complained about the sexually harassing conduct to which she was subjected, Defendants subjected her to hostile and retaliatory conduct, including that which is set forth herein.

78.     Students on the wrestling team told Plaintiff that she was not supposed to communicate with them, about anything, until the investigation was over.

79.     Plaintiff was told that she was not allowed to coach, or travel to events and competitions with the team while the investigation was ongoing.

80.     Plaintiff was told that she was not allowed to travel to the Olympic trials with the team, despite having previously been told that she could go and coach the students.

81.     Plaintiff attended the Olympic trials, not as a coach for the students on the team, but in her capacity helping to coach Nelson.

82.     When Plaintiff was at the Olympic trials, she was told that Defendants were looking for other coaches to replace her as Assistant Coach.

83.     To Plaintiff's information and belief, E. Vandiver told students that Plaintiff's allegations against C. Vandiver were false.

84.     Plaintiff complained to Morris and to Anderson that she was being punished for complaining about sexually harassing conduct, including sexual assault.

85.     On or about April 8, 2021, Defendants terminated Plaintiff's employment effective immediately.

86.     Plaintiff was told that she was terminated because of the dynamic that she had created on the wrestling team.

87.     Plaintiff was told that, if she did not leave Defendants within two hours, they would call the police and have her arrested for trespassing.

88.     E. Vandiver and C. Vandiver were not terminated from Defendants.

89.     According to Defendants' website, E. Vandiver remains the Head Coach of the girls' varsity wrestling team.

90.     According to Defendants' website, C. Vandiver is an Assistant Coach of the girls' varsity wrestling team.

91.     Prior to Plaintiff's termination, Defendants did not update her regarding the investigation into her complaints.

92.     On or about May 6, 2021, Plaintiff was informed that someone connected with Defendants had filed an Incident Report with the United States Center for SafeSport alleging that Plaintiff had engaged in misconduct with students on the wrestling team, including that she had molested them.

93.     The U.S. Center for SafeSport is a nonprofit organization dedicated to ensuring that student athletics were free from abuse and misconduct.

94.     To Plaintiff's information and belief, the Incident Report that was filed with the U.S. Center for SafeSport regarding her alleged conduct was found to be unsubstantiated.

95.     Plaintiff's sex was a motivating and/or determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including subjecting her to a hostile work environment, terminating her employment, and making a complaint about

her to the U.S. Center for SafeSport.

96.     Plaintiff's complaints of sex discriminatory conduct were motivating and/or determinative factors in connection with Defendants' retaliatory conduct to which Plaintiff was subjected, including subjecting her to a hostile work environment, terminating her employment, and making a complaint about her with the U.S. Center for SafeSport.

97.     Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

98.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

99.     As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I – TITLE VII

100.    Plaintiff incorporates herein by reference paragraphs 1 through 99 above, as if set forth herein in their entirety.

101.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

102.    Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

103.    As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

104.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

105.    No previous application has been made for the relief requested herein.

### COUNT II – PHRA

106.    Plaintiff incorporates herein by reference paragraphs 1 through 105 above, as if set forth herein in their entirety.

107.    Defendants, by the above improper and discriminatory acts, have violated the PHRA.

108.    Said violations were intentional and willful.

109.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorney's fees and costs.

110.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

111.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)     enjoining and permanently restraining the violations alleged herein;

(d)     entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(e)     awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(f)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(g)     awarding punitive damages to Plaintiff under Title VII;

(h)     awarding Plaintiff such other damages as are appropriate under the Title VII and the PHRA;

(i)      awarding Plaintiff the costs of suit, expert fees and other

disbursements, and reasonable attorneys' fees; and,

(j)      granting such other and further relief as this Court may deem just,

proper, or equitable including other equitable and injunctive relief providing restitution

for past violations and preventing future violations.


**CONSOLE MATTIACCI LAW, LLC**

Dated:  January 10, 2023          BY:      /s/ Brian Farrell_____
                                          Brian C. Farrell, Esq.
                                          1525 Locust St., 9th Floor
                                          Philadelphia, PA 19102
                                          (215) 545-7676
                                          (215) 689-4365 (fax)

                                          Attorney for Plaintiff,
                                          Crystal Weber